ESTATE OF CHARLES C. INGALLS, DECEASED, W. E. CLARK AND STERLING NEWELL, CO-EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEWIS INGALLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT INGALLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101717, 101718, 101719. Promulgated November 21, 1941.

*William A. Southworth, Esq.*, for the petitioners.
*W. W. Kerr, Esq.*, for the respondent.

## OPINION.

TURNER: In their petitions, petitioners Lewis and Robert Ingalls raised no question as to whether they are transferees of the estate. At the hearing they admitted liability as transferees for the deficiency determined against the estate in event it is finally determined that the estate is liable for a deficiency. Consequently, the only questions in controversy relate to the correctness of the respondent's determination with respect to the estate.

Relying on the provisions of sections 115 (c) and 117 (a) (2) and (b) of the Revenue Act of 1938 and the fact that the preferred stock in the Ingalls Stone Co. had been held by the estate for more than ten years, the petitioners contend that only 50 percent of the gain realized on the redemption of the stock should be taken into account in the computation of the estate's net income.

The Revenue Act of 1938 provides as follows:

SEC. 115. DISTRIBUTION BY CORPORATIONS.

\*       \*       \*       \*       \*       \*       \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section

111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. * * *

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this title—

     *       *       *       *       *       *       *

(2) SHORT-TERM CAPITAL GAIN.—The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 18 months, if and to the extent such gain is taken into account in computing net income;

     *       *       *       *       *       *       *

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income;

     *       *       *       *       *       *       *

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 18 months;

66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months;

50 per centum if the capital asset has been held for more than 24 months.

Petitioners concede that the amount received by the estate on the redemption of the preferred stock in the Ingalls Stone Co. constituted a distribution in partial liquidation of a corporation within the meaning of the provisions of section 115 (c) and also that under those provisions the gain realized by the estate on the stock redemption constituted short-term capital gain. However, relying on the absence of any provision in section 115 (c) specifying the percentage of gain that is to be taken into account in computing net income, petitioners contend that the mere characterization by section 115 (c) of the gain here in controversy as short-term capital gain does not determine what percentage of the amount thereof is to be taken into account in computing net income. They contend that that question is determined solely by the provisions of section 117 (b), which are the only provisions specifying the percentages of gain that are to be taken into account in computing net income, and that the percentages specified therein are predicated solely upon the period for which the taxpayer has held the asset from which the gain arises and not upon whether the asset is characterized by the act as short-term capital gain or long-term capital gain.

The distribution made to the estate by Ingalls Stone Co. in November 1938 clearly was not in complete liquidation of the corporation and therefore does not fall within the exception contained in the last sentence of the above quoted portion of section 115 (c). Under these circumstances it is our opinion that by the provisions of section 115 (c) Congress has definitely provided that, despite

anything to the contrary in section 117, gain such as is involved here is to be considered as short-term capital gain and that it is to be so considered even though the stock from which the gain arises actually was held by the estate for a longer period than the holding period stated in the definition of short-term capital gain as contained in section 117 (a) (2). Since such gain must be considered as short-term capital gain under section 115 (c) and short-term gain is defined by section 117 (a) (2) as gain resulting from the sale or exchange of a capital asset held for not more than 18 months, it follows by the terms of section 117 (b) that such gain must be treated for income tax purposes in the same manner as gain resulting from an asset held for not more than 18 months and that 100 percent thereof is to be taken into account. To grant the construction sought by the petitioners would render meaningless the provision of section 115 (c) to the effect that gain resulting from partial liquidation of a corporation shall be considered as "short-term capital gain." The language of the statute will not permit such a construction.

The petitioners contend that under the provisions of sections 23 (g) [1] and 117 (b) the estate is entitled to take into account in computing net income 50 percent of the loss of $1,333.33 or $666.67 sustained on the sale of stock in the Citizens National Bank to the Ingalls Stone Co. The respondent's position is that the deduction of such amount is not allowable under the provisions of section 24 (b) (1) of the act.[2]

It is to be noted from the provisions of section 24 (b) (1) that "no deduction" is to be allowed "in any case" in respect of losses from sales or exchanges of property between the parties specified in

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

  In computing net income there shall be allowed as deductions:

   *       *       *       *       *       *       *

  (g) CAPITAL LOSSES.—

  (1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

   *       *       *       *       *       *       *

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

   *       *       *       *       *       *       *

  (b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

  (1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

  (A) Between members of a family, as defined in paragraph (2) (D);

  (B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned directly or indirectly, by or for such individual;

  (C) Except in the case of distributions in liquidation, between two corporations more than 50 per centum in value of the outstanding stock of each of which is owned, directly or indirectly, by or for the same individual, if either one of such corporations, with respect to the taxable year of the corporation preceding the date of the sale or exchange was, under the law applicable to such taxable year, a personal holding company or a foreign personal holding company;

  (D) Between a grantor and a fiduciary of any trust;

  (E) Between the fiduciary of a trust and the fiduciary of another trust, if the same person is a grantor with respect to each trust; or

  (F) Between a fiduciary of a trust and a beneficiary of such trust.

paragraphs (A), (B), (C), (D), (E), or (F). Here the sale was made by an estate to a corporation more than 50 per centum of the stock of which was owned by the estate. None of the provisions referred to specifically deny deduction by an estate of a loss so sustained and the parties have narrowed the issue to the applicability of section 24 (b) (1) (B), which is to the effect that no deduction shall·be allowed in respect of losses resulting from the sale of property between "an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual", the respondent contending that for the purposes of that section the estate must be regarded as an individual and the petitioners contending to the contrary. The word estate is not defined in the act. In section 901 of Title VI—General Provisions, the term "person" is defined to mean "an individual, a trust or estate, a partnership, or a corporation", thereby indicating a recognition of difference between an individual and an estate. Section 24 (b) (2) of the Revenue Act of 1938 [3] was obviously inserted to make clear what was meant by the words "directly or indirectly" as used in section 24 (b) (1) and as indicating the parties owning the said property and participating in the sale or exchange thereof. In paragraph (A) of section 24 (b) (2) the statute states that "stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries." From that provision it thus appears that for the purpose of applying section 24 (b) (1) the stock sold by the estate of Charles C. Ingalls to the Ingalls Stone Co. is to be regarded as having been owned by the beneficiaries of the estate and by them sold to the Ingalls Stone Co. It is to be noted, however, that the stock must "be considered as being owned proportionately" by the beneficiaries of the estate and in the instant case the petition and answer show that the estate had four

---

[3] (2) STOCK OWNERSHIP, FAMILY AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

(A) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries;

(B) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;

(C) An individual owning (otherwise than by the application of subparagraph (B)) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner;

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood) spouse, ancestors, and lineal descendants; and

(E) CONSTRUCTIVE OWNERSHIP AS ACTUAL OWNERSHIP.—Stock constructively owned by a person by reason of the application of subparagraph (A) shall, for the purpose of applying subparagraph (A), (B), or (C), be treated as actually owned by such person, but stock constructively owned by an individual by reason of the application of subparagraph (B) or (C) shall not be treated as owned by him for the purpose of again applying either of such subparagraphs in order to make another the constructive owner of such stock.

distributees. It would seem therefore that under the facts in this case it may not be said that the sale occurred between "*an individual* and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for *such individual*." (Emphasis supplied.) The vendor here being an estate, section 24 (b) (2) (A) is applied to determine the indirect owners of the stock sold and it is found that the owners were the beneficiaries of the estate, were four in number, and owned the stock proportionately. Accordingly the stock was sold not by "an individual", but by a group of individuals, and, further, no "such individual" owned "more than 50 percentum in value of the outstanding stock" of the purchasing corporation. Section 24 (b) (1) does not therefore prohibit the deduction of the loss in question and the second issue is determined for the petitioners.

The respondent makes no claim that the stock in question was owned or sold by a family or any member thereof, nor does he suggest or claim that the distributees of the estate were or may have been members of a family within the meaning of the statute. We do not therefore consider or decide whether the statute would require a different result in a case where there is a claim that a family relationship does or may exist between the beneficiaries of the estate making the sale.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Opper dissents on the second point.