ESTATE OF RUTH HANNA, DECEASED, THE NATIONAL CITY BANK OF CLEVELAND, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85667.   Filed October 20, 1961.

*Louis A. Boxleitner, Esq.,* for the petitioner.
*Eugene S. Linett, Esq.,* for the respondent.

OPINION.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax in the amount of $11,279.78 for the year 1958. The sole

issue presented is whether a loss resulting from the redemption of stock by a corporation from a decedent's estate is deductible by the estate when all the stock of the corporation is owned by the estate and its beneficiaries who are sisters.

The National City Bank of Cleveland is the duly appointed, qualified, and acting executor of the estate of Ruth Hanna, deceased, under the appointment of the Probate Court of Cuyahoga County, Ohio. Its principal office is in Cleveland, Ohio, and it filed a fiduciary income tax return for 1958 with the director of internal revenue at Cleveland.

Ruth Hanna died testate on July 4, 1955, and included in her gross estate were 2,500 shares of the Leader Building Company, hereinafter sometimes referred to as Leader. The Commissioner upon audit of the Federal estate tax return filed by petitioner determined that the value of the stock of Leader was $325 per share or an aggregate value of $812,500. The total value of the gross estate for estate tax purposes was $840,860.37.

At the time of decedent's death, Leader had 10,000 shares outstanding, which were owned as follows:

| | Shares |
|---|---|
| Ruth Hanna | 2,500 |
| The National City Bank of Cleveland as Trustee for Natalie Hanna Marvin | 2,605 |
| The National City Bank of Cleveland as Trustee for Charlotte Hanna Royce | 2,180 |
| The National City Bank of Cleveland as Trustee for Mary Hanna Ross | 2,715 |
| Total | 10,000 |

Natalie Hanna Marvin, Charlotte Hanna Royce, and Mary Hanna Ross were sisters of the decedent and survived the decedent. The shares owned by the National City Bank of Cleveland were held by it as trustee under separate, revocable trust agreements entered into with the bank by each of the sisters. The terms of the trust agreements are not here material.

The sisters were the legatees in equal shares of decedent's residuary estate located or deposited in the United States, including all decedent's stock in Leader.

On April 12, 1945, decedent and her three sisters, the shareholders of Leader, entered into a buy-sell agreement which was designated by the parties as a "Depositary Agreement." The pertinent provisions of this agreement are as follows:

3. The formula price * * * the price at which the Stockholders shall have rights and options hereunder to purchase, shall be an amount equal to the average net earnings before depreciation multiplied by eleven and said total sum divided by the number of shares outstanding. The figures for computing

the foregoing formula shall be taken from the last five annual audited Reports of The Leader Building Company available to the Depositary immediately preceding the date of the receipt by the Depositary of the notice of the Stockholder of a desire to sell or dispose of a given number of shares.

The parties amended the Depositary Agreement by an instrument dated January 7, 1947.

By instrument under date November 24, 1954, the duration of the Depositary Agreement was extended for a term of 5 years until the second Monday of March 1960.

Petitioner was in need of cash to pay the Federal estate taxes and the administration expenses of the estate, which cash could be obtained only by sale or other disposition of the Leader shares held by petitioner. The other parties to the Depositary Agreement did not exercise their option rights to purchase the shares to be sold or disposed of by petitioner. And pursuant to the Depositary Agreement, Leader then redeemed its shares as follows:

| Redemption date | Number of shares redeemed | Redemption price per share | Total amount received on redemption |
|---|---|---|---|
| Sept. 27, 1956 | 450 | $227.33 | $102,298.50 |
| Mar. 14, 1957 | 250 | 227.33 | 56,817.50 |
| Nov. 15, 1957 | 433 | 258.25 | 111,822.25 |
| Feb. 3, 1958 | 20 | 289.30 | 5,786.00 |

The redemption price per share paid by Leader in the foregoing redemptions was determined pursuant to the formula in the Depositary Agreement.

Petitioner in the fiduciary income tax return claimed losses on the redemption of the shares by Leader as follows:

| Year | Amount |
|---|---|
| 1956 | $43,951.50 |
| 1957 | 53,335.25 |
| 1958 | 713.30 |

Petitioner, on or about July 23, 1958, received $346,466.25 as a distribution in complete liquidation of Leader, which distribution was received in connection with the 897 shares still held by petitioner at that time. The liquidation distribution resulted in a long-term capital gain of $54,941.25.

With respect to the $43,951.50 claimed by petitioner in 1956, the amount of $42,951.50 was treated as a capital loss carryover to 1958. The loss of $53,335.25 sustained in 1957 was also treated as a capital loss carryover to 1958. In its fiduciary income tax return for 1958, petitioner applied the aggregate carryovers of $96,286.75 plus the $713.30 loss incurred in the redemption in 1958 to eliminate the capital gain of $54,941.25.

The Commissioner disallowed the capital loss carryover of $96,-286.75 and the capital loss of $713.30 "for the reason that the loss and the loss carryover arose from transactions between related parties."

The shares of Leader were redeemed in the years 1956, 1957, and 1958 pursuant to the provisions of section 303, I.R.C. 1954, relating to distributions in redemption of stock to pay death taxes, and funeral and administration expenses. The question raised in the instant case is whether the losses arising from these redemptions were properly disallowed by the Commissioner.

The Commissioner disallowed the losses under section 267, I.R.C. 1954,[1] contending that the losses were incurred from sales or exchanges between an individual and a corporation more than 50 percent in

---

[1] SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.
  (a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—
    (1) LOSSES.—In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b).

        *        *        *        *        *        *        *

  (b) RELATIONSHIPS.—The persons referred to in subsection (a) are:
    (1) Members of a family, as defined in subsection (c)(4);
    (2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual;
    (3) Two corporations more than 50 percent in value of the outstanding stock of each of which is owned, directly or indirectly, by or for the same individual, if either one of such corporations, with respect to the taxable year of the corporation preceding the date of the sale or exchange was, under the law applicable to such taxable year, a personal holding company or a foreign personal holding company;
    (4) A grantor and a fiduciary of any trust;
    (5) A fiduciary of a trust and a fiduciary of another trust, if the same person is a grantor of both trusts;
    (6) A fiduciary of a trust and a beneficiary of such trust;
    (7) A fiduciary of a trust and a beneficiary of another trust, if the same person is a grantor of both trusts;
    (8) A fiduciary of a trust and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for the trust or by or for a person who is a grantor of the trust; or
    (9) A person and an organization to which section 501 (relating to certain educational and charitable organizations which are exempt from tax) applies and which is controlled directly or indirectly by such person or (if such person is an individual) by members of the family of such individual.
  (c) CONSTRUCTIVE OWNERSHIP OF STOCK.—For purposes of determining, in applying subsection (b), the ownership of stock—
    (1) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries;
    (2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;
    (3) An individual owning (otherwise than by the application of paragraph (2)) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner;
    (4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and
    (5) Stock constructively owned by a person by reason of the application of paragraph (1) shall, for the purpose of applying paragraph (1), (2), or (3), be treated as actually owned by such person, but stock constructively owned by an individual by reason of the application of paragraph (2) or (3) shall not be treated as owned by him for the purpose of again applying either of such paragraphs in order to make another the constructive owner of such stock.

value of the outstanding stock of which was owned by or for such individual within the meaning of section 267(b) (2). As a basis for this conclusion, the Commissioner says that under 267(c) (1), the stock in Leader owned by petitioner is considered as being owned proportionately by the three beneficiaries and submits that we are authorized under 267(c) (1) to look through the estate and find that the sale was not made by the estate but was actually between the three beneficiaries and Leader, citing *Estate of Charles C. Ingalls*, 45 B.T.A. 787 (1941), affd. 132 F. 2d 862 (C.A. 6, 1943).

In *Estate of Charles C. Ingalls, supra*, the estate owned more than 50 percent of the outstanding stock of the A corporation and it sold stock of the B corporation to the A corporation at a loss. The Commissioner determined that the loss deduction was not allowable under the provisions of section 24(b) (1) and (2), I.R.C. 1939.[2] In the course of our opinion allowing the deduction we said:

None of the provisions referred to specifically deny deductions by an estate of a loss so sustained and the parties have narrowed the issue to the applicability of section 24(b) (1) (B), which is to the effect that no deduction shall be allowed

---

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

(A) Between members of a family, as defined in paragraph (2) (D) ;

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual ;

(C) Except in the case of distributions in liquidation, between two corporations more than 50 per centum in value of the outstanding stock of each of which is owned, directly or indirectly, by or for the same individual, if either one of such corporations, with respect to the taxable year of the corporation preceding the date of the sale or exchange was, under the law applicable to such taxable year, a personal holding company or a foreign personal holding company ;

(D) Between a grantor and a fiduciary of any trust ;

(E) Between the fiduciary of a trust and the fiduciary of another trust, if the same person is a grantor with respect to each trust ; or

(F) Between a fiduciary of a trust and a beneficiary of such trust.

(2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

(A) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries ;

(B) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family ;

(C) An individual owning (otherwise than by the application of subparagraph (B)) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner ;

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants ; and

(E) Constructive Ownership as Actual Ownership.—Stock constructively owned by a person by reason of the application of subparagraph (A) shall, for the purpose of applying subparagraph (A), (B), or (C), be treated as actually owned by such person, but stock constructively owned by an individual by reason of the application of subparagraph (B) or (C) shall not be treated as owned by him for the purpose of again applying either of such subparagraphs in order to make another the constructive owner of such stock.

in respect of losses resulting from the sale of property between "an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual", the respondent contending that for the purposes of that section the estate must be regarded as an individual and the petitioners contending to the contrary. The word estate is not defined in the act. In section 901 of Title VI—General Provisions, the term "person" is defined to mean "an individual, a trust or estate, a partnership, or a corporation", thereby indicating a recognition of difference between an individual and an estate. Section 24(b)(2) of the Revenue Act of 1938 was obviously inserted to make clear what was meant by the words "directly or indirectly" as used in section 24(b)(1) and as indicating the parties owning the said property and participating in the sale or exchange thereof. In paragraph (A) of section 24(b)(2) the statute states that "stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries." From that provision it thus appears that for the purpose of applying section 24(b)(1) the stock sold by the estate of Charles C. Ingalls to the Ingalls Stone Co. is to be regarded as having been owned by the beneficiaries of the estate and by them sold to the Ingalls Stone Co. It is to be noted, however, that the stock must "be considered as being owned proportionately" by the beneficiaries of the estate and in the instant case the petition and answer show that the estate had four distributees. It would seem therefore that under the facts in this case it may not be said that the sale occurred between *an individual* and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for *such individual*." (Emphasis supplied.) The vendor here being an estate, section 24(b)(2)(A) is applied to determine the indirect owners of the stock sold and it is found that the owners were the beneficiaries of the estate, were four in number, and owned the stock proportionately. Accordingly the stock was sold not by "an individual", but by a group of individuals, and, further, no "such individual" owned "more than 50 per centum in value of the outstanding stock" of the purchasing corporation. Section 24(b)(1) does not therefore prohibit the deduction of the loss in question and the second issue is determined for the petitioners.

The Commissioner relies on *Ingalls* even though in that case we held the loss deductible. He argues that when the principle enunciated in *Ingalls*, i.e., that property sold by an estate is actually owned and sold by the beneficiaries, is applied to the facts in the instant case, the losses should be disallowed. As support for this argument the Commissioner points out that in *Ingalls* we stated at page 793—

The respondent makes no claim that the stock in question was owned or sold by a family or any member thereof, nor does he suggest or claim that the distributees of the estate were or may have been members of a family within the meaning of the statute. We do not therefore consider or decide whether the statute would require a different result in a case where there is a claim that a family relationship does or may exist between the beneficiaries of the estate making the sale.

The Commissioner, in arguing that an opposite result should be forthcoming in this case due to the changed factual situation, asserts that under section 267(c)(1) the stock of Leader held by the National City Bank of Cleveland in three separate trusts, one for the benefit

of each of the three beneficiaries of petitioner, is considered as being owned by such beneficiaries and concludes that since the three beneficiaries are also all members of a family within the meaning of section 267(c)(4), being sisters of the decedent, any one of them may be considered as owning all the outstanding stock of Leader, and thus as being the individual who transferred the redeemed shares to Leader.

We think the principle of *Ingalls*, if logically applied here, calls for the result contended for by the Commissioner, and we so hold. *Ingalls* has never been overruled. It was distinguished in *John A. Snively, Sr.*, 20 T.C. 136, a case involving trusts and trust beneficiaries instead of an estate and the beneficiaries of the estate, and *Snively* was subsequently followed in *Lexmont Corporation*, 20 T.C. 185. Those cases, however, seem to leave the *Ingalls* rationale untouched.

We point out, too, that the results of *Snively* and *Lexmont* have since been changed by section 267(b)(8), I.R.C. 1954. See S.Rept. No. 1622, 83d Cong., 2d Sess., p. 226. On the other hand, no legislative action has been taken which would affect the holding in *Ingalls*.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DRENNEN, *J.*, concurring: I concur in the result reached by the majority because I think this case is controlled by the rationale of *Estate of Charles C. Ingalls*, 45 B.T.A. 787 (1941), which was reviewed by the Board and affirmed on appeal 132 F. 2d 862 (C.A. 6, 1943),[1] and I find no other case directly supporting a contrary view. However, were this question one of first impression I would be constrained to disagree with the result reached here.

The loss is disallowed here under section 267 of the Internal Revenue Code of 1954 which, for our purposes, is the same as section 24(b) of the Internal Revenue Code of 1939, involved in the *Ingalls* case. Section 267(a) disallows losses from sales or exchanges of property, directly or indirectly, between persons specified in subsection (b). While paragraphs (4), (5), (6), (7), and (8) of that subsection refer to various transactions involving trusts, none of them refer to an estate. In fact, respondent relies on subparagraph (2) to disallow the loss in this case, which refers to a transaction between "an individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual."

---

[1] The result reached by the Board was the opposite of the result reached here but for a reason not applicable here. The appeal in *Ingalls* was apparently prosecuted by the petitioners only, in whose favor this issue had been decided by the Board, and the per curiam opinion of the Court of Appeals does not indicate whether the issue here involved was even considered on appeal.

The seller here was an estate, not an individual. Compare *John A. Snively, Sr.*, 20 T.C. 136 (1953); *Lexmont Corporation*, 20 T.C. 185 (1953). But, says respondent, if we apply the attribution rules of section 267(c)(1) as this Court did in the *Ingalls* case, the seller constructively becomes the individuals who were the beneficiaries of the estate and thus we have a sale between an individual (or individuals) and a corporation more than 50 percent of whose stock is, by virtue of the attribution rules of section 267(c)(2), constructively owned by the individual.

The fallacy in this reasoning seems to me to be that section 267(c), containing the attribution rules, by its own terms is for the purpose of determining the "ownership of stock" of a corporation only and not for the purpose of determining whether the other party to the transaction, the seller-estate here, qualifies as an individual under section 267(b)(2). See report of the Ways and Means Committee, H. Rept. No. 1546, 75th Cong., 1st Sess., p. 27, 1937–2 C.B. 609, with respect to section 301 of the Revenue Act of 1937, the source of section 24(b)(2), I.R.C. 1939. If the attribution rules are not applied to make the individual beneficiaries of the estate the constructive sellers of the stock, we do not have a transaction which falls within any of the paragraphs of section 267(b), and the loss would not be disallowed under section 267(a)(1).

However, in the opinion in the *Ingalls* case this Court applied the attribution rules in determining that stock owned and sold by an estate is to be regarded as having been owned and sold by the beneficiaries of the estate, and I think the rationale of that opinion requires the conclusion reached here.