ESTATE of Ruth HANNA, Deceased, The National City Bank of Cleveland, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14933.

United States Court of Appeals
Sixth Circuit.

July 19, 1963.

Thomas V. Koykka, Cleveland, Ohio, for petitioner, Louis A. Boxleitner, Arter, Hadden, Wykoff & VanDuzer, Cleveland, Ohio, on the brief.

Stephen B. Wolfberg, Dept. of Justice, Washington, D. C., for respondent, Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioner, Estate of Ruth Hanna, deceased, sought in the Tax Court a redetermination of an income tax deficiency for the year 1958 in the amount of $11,279.78. The Tax Court sustained the deficiency assessment. Estate of Ruth Hanna, Deceased v. Commissioner, 37 T.C. 63. Petitioner seeks a review of the decision of the Tax Court.

The facts are stated in detail in the stipulation and in the opinion of the Tax Court, to which reference is made. For the purposes of this opinion, the following:

basic facts are sufficient for a decision of the issue involved.

The decedent died testate on July 4, 1955. Included in her gross estate were 2500 shares of stock of The Leader Build-ing Company in Cleveland, Ohio. At the time of decedent's death The Leader Building Company had 10,000 shares out-standing, the ownership of which was as follows:

| | |
|---|---|
| Ruth Hanna, the decedent | 2,500 shares |
| National City Bank as Trustee for Natalie Hanna Marvin | 2,605 " |
| National City Bank as Trustee for Charlotte Hanna Royce | 2,180 " |
| National City Bank as Trustee for Mary Hanna Ross | 2,715 " |
| Total | 10,000 shares |

Natalie Hanna Marvin, Charlotte Hanna Royce and Mary Hanna Ross were sisters of the decedent.

Petitioner's basis for the stock held by it was $325.00 per share, the value de-termined by the Commissioner upon audit of the Federal Estate Tax return filed by the petitioner. The total value of The Leader Building Company stock included in the gross estate was thus $812,500.00. The value of the gross estate for Estate Tax purposes was $840,860.37. The tax-payer, accordingly, found it necessary to raise substantial funds through the sale of some of The Leader Building Com-pany stock to pay the resulting Federal Estate Tax. On April 12, 1945, the dece-dent and her three sisters had entered into a buy-sell agreement under which they had the option to purchase shares to be sold by a party to the agreement at a price determined pursuant to a described formula. Each of the decedent's three sisters declined to exercise their option to purchase the stock under the buy-sell agreement.

On September 27, 1956, The Leader Building Company redeemed from the petitioner 450 shares of said company's stock at a price of $227.33 per share.

In 1957 The Leader Building Company redeemed 250 shares of its stock at $227.-33 per share and 433 shares of its stock at $258.25 per share.

On February 3, 1958, The Leader Building Company redeemed 20 shares of its stock from petitioner for which it paid $5,786.00.

Of the balance of 1,347 shares re-tained by the estate, 450 shares were, on March 31, 1957, distributed to the three sisters, who were the beneficiaries in equal proportions of the estate, and the remaining 897 shares were subsequently surrendered to the company upon its com-plete liquidation on July 23, 1958.

In its Fiduciary Income Tax Return for the calendar year 1956 the petitioner claimed a loss of $43,951.50 on the re-demption of shares in 1956. Of this total loss, the amount of $42,951.50 was treated as a capital loss carryover in its 1958 Fiduciary Income Tax Return.

In its Fiduciary Income Tax Return for 1957 the petitioner claimed a loss of $53,335.25 on the redemption of shares in 1957, which entire amount was treated as a capital loss carry-over in its Fidu-ciary Income Tax Return for 1958.

In its Fiduciary Income Tax Return for 1958 the petitioner claimed a loss of $713.30 on the redemption of shares in 1958, which was treated as a long-term capital loss for the year 1958.

On or about July 23, 1958, petitioner received $346,466.25 as a distribution in complete liquidation of The Leader Build-ing Company, which distribution was

received in connection with the 897 shares of the Company stock still owned by petitioner at that time. Petitioner realized a long-term capital gain of $54,-941.25 in the calendar year 1958 by reason of this liquidation distribution.

In its Fiduciary Income Tax Return for 1958 petitioner applied the total amount of $96,286.75 from the loss carryovers from 1956 and 1957 and the amount of $713.30 as the long-term capital loss from the redemption of shares in that year to eliminate or offset the amount of $54,941.25 received in 1958 in the final liquidation of The Leader Building Company.

On audit of petitioner's Fiduciary Income Tax Return for the year 1958 the Commissioner disallowed the aforesaid deductions of $96,286.75 and $713.30 against the long-term capital gain of $54,941.25 on the ground that said amounts deducted as losses arose from transactions between related parties, which were not deductible within the provisions of Section 267, Internal Revenue Code of 1954. This disallowance resulted in the deficiency assessment now under review.

This review, accordingly, presents for our consideration a construction of Section 267, Internal Revenue Code of 1954, which was formerly carried as Section 24 of the Internal Revenue Code of 1939. In general, it disallows losses from sales or exchanges of property between persons occupying certain relationships which ordinarily would not result in a real economic loss. The following portions of Section 267 are applicable to our present case (emphasis added):

"Losses, expenses, and interest with respect to transactions between related taxpayers

"§ 267 (1954 Code). (a) Deductions disallowed.—*No deduction shall be allowed*—

"(1) Losses.—*In respect of losses* from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, *between per-*

*sons specified within any one of the paragraphs of subsection (b).*

\* \* \* \* \* \*

"(b) Relationships.—*The persons referred to in subsection (a) are:*

"(1) Members of a family, as defined in subsection (c) (4);

"(2) *An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual;*

\* \* \* \* \* \*

"(c) Constructive ownership of stock.—For purposes of determining, in applying subsection (b), the ownership of stock—

"(1) *Stock owned*, directly or indirectly, *by* or for a corporation, partnership, estate, or *trust shall be considered as being owned proportionately by or for its* shareholders, partners, or *beneficiaries;*

"(2) *An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;*

"(3) An individual owning (otherwise than by the application of paragraph (2)) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner;

"(4) *The family of an individual shall include* only *his* brothers and *sisters* (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and".

The disallowance of the loss by the Commissioner was under Section 267(b) (2) which disallows a loss resulting from a sale or exchange of property between an *individual* and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual. Although the sale or exchange was between an *estate* and a corporation, instead of between an *individual* and a corporation as specified in the statute, the Commissioner contends that under Section 267(c)

(1) the stock owned by the estate is considered as being owned by the beneficiaries of the estate, and under Section 267(c) (2) and (4) an individual is considered as owning the stock owned by or for his family, which includes sisters. The net result of this reasoning is that the stock was sold by a sister, who was an individual rather than an estate, and that such sister, being considered as owning the stock of the other sisters, owned more than 50 percent of the outstanding stock of the redeeming corporation. The Tax Court adopted this reasoning and interpretation of Section 267 in disallowing the deduction.

We are of the opinion that this is not the correct construction of Section 267 and that the deduction should be allowed.

It is clear that under Section 267(a) and (b) losses resulting from sales or exchanges of property, otherwise deductible, are disallowed *only* if such sales or exchanges are between specified persons. Of the nine specified types of transactions in which losses are disallowed, no one of them by it terms covers the transactions in this case. The only one claimed by the Commissioner to be applicable is the one specified in Section 267(b) (2), namely a sale or exchange between an *individual* and a corporation. The sale or exchange in the present case was between an *estate* and a corporation. Clearly, an individual and an estate are not the same. Estate of Charles C. Ingalls v. Commissioner, 45 B.T.A. 787, 792; Section 7701(a) (1), Internal Revenue Code, 1954. The Commissioner does not so contend. Accordingly, unless there is some other applicable statutory provision, the deduction cannot be disallowed under Section 267(b) (2).

The question is thus presented whether the provisions of Section 267(b) (2) are changed by the provisions of Section 267(c) (1), (2) and (4), as contended by the Commissioner.

Section 267(c), by its title, deals with the "Constructive Ownership of Stock." It does not say that a sale by an estate is to be considered as a sale by an individual, thus enlarging the transactions barred by Section 267(b). It states the rules to be followed in determining the "ownership of stock" in applying Section 267(b) (2). Under Section 267(b) (2) the ownership of stock is a crucial item in that an individual selling to a corporation cannot take a loss as a deduction if "such individual" owns more than 50 per cent in value of the outstanding stock. In determining that question "such individual" is constructively charged with the ownership of stock by others under circumstances set out in Section 267(c). If Congress intended to disallow losses from sales by an estate in addition to loses from sales by an individual, which is the result sought by the Commissioner in this case, it could easily have done so in express language in Section 267(b) (2) where, in barring losses in sales between "An individual and a corporation" it could have simply said sales between "An individual *or an estate* and a corporation." Having failed to do so, we do not think we are justified in so enlarging Section 267(b) (2) by implications drawn from another section of the statute dealing with the constructive ownership of stock.

The Commissioner and the Tax Court rely upon Estate of Charles C. Ingalls v. Commissioner, supra, 45 B.T.A. 787, affirmed by this Court, 132 F.2d 862. The affirmance by this Court, however, is of no significance, in that the issue involved in the present case was only one of the two issues decided by the Board of Tax Appeals in that case. This issue was decided by the Board in favor of the taxpayer, of which ruling the Commissioner did not seek a review. The other issue, which is not involved in the present case, was decided adversely to the taxpayer, of which ruling the taxpayer sought a review. Our affirmance, in a very short Per Curiam, dealt with that issue only, not the issue in the present case which was not before the Court.

We agree with the Tax Court, that although the ruling by the Board of Tax Appeals in the Ingalls case was in favor of the taxpayer, it was the result of a

58

factual situation different from that in the present case, and that the rationale of the Ingalls case, if followed here, would result in an affirmance of the Tax Court. One member of the Tax Court, in a separate concurring opinion, disagreed with the rationale in the Ingalls opinion and expressed the view that we have expressed in this opinion, but felt constrained in view of the prior ruling to apply the rationale of the Ingalls opinion.

We have been referred to no other case in which this question has been passed upon. We are not in accord with the rationale of the Ingalls case and are of the opinion that it should not be adopted in the present case.

The decision of the Tax Court is reversed and the case remanded for further proceedings consistent with the views expressed herein.