Aloysius J. McGINTY and Alice B. McGinty, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17, Docket 28019.

United States Court of Appeals Second Circuit.

Argued Oct. 16, 1963.

Decided Dec. 11, 1963.

John J. McCall, Albany, N. Y., for petitioners.

Crombie J. D. Garrett, atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before WATERMAN, HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

In 1950, the stock of Berkshire Family Laundry Co., Inc. was owned one-third by

petitioner Aloysius J. McGinty [1] and two-thirds by a testamentary trust. The trust desired to sell its stock to petitioner and McGinty desired to purchase it but did not have the funds to do so. To meet this situation, the corporation borrowed $42,000 from a bank and loaned $40,000 to Mrs. McGinty, acting as a conduit for Mr. McGinty, on the strength of her note.[2] She then paid this money to the trustees, and the trustees assigned the stock to Mr. McGinty, who thus became its owner. On July 31, 1954 Berkshire cancelled the note from Mrs. McGinty and redeemed two-thirds of its stock. The Commissioner determined that this redemption was taxable as a distribution of property under section 302(d) of the Internal Revenue Code of 1954, 26 U.S.C. § 302(d), and was a dividend to Mr. McGinty to the extent of Berkshire's earnings and profits. His determination was sustained by the Tax Court, whose decision is now presented for review. We are in accord with their views and accordingly affirm

Prior to 1954 the question whether a redemption of stock was taxable as a dividend had been a difficult and vexing one under the general language of Section 115(g) of the 1939 Code. In an effort to promote greater certainty in the area, Congress made several changes in the comparable provisions under the 1954 Code. Where, under the 1939 Code, changes in both the shareholder's relation to the corporation and in the scope of the corporation's activity were held relevant to the question of dividend equivalence, it is clear that under § 302 of the 1954 Code only the former are relevant. "Corporate contraction" is to be considered in determining whether a distribution in redemption of stock is a partial liquidation under § 346.[3] Furthermore, if the distribution meets the conditions of § 302 (b)(2)–(4), a shareholder may be assured that the redemption will be considered a sale or exchange without any need to consider whether it is "essentially equivalent to a dividend." However, the vaguer phrase continues to appear in the statute, in § 302(b)(1), along with an admonition not to consider the failure to qualify under the so-called "safe harbors" as bearing on the question of dividend equivalence. The Committee Report indicates that the determinative question in considering whether a redemption is not essentially equivalent to a dividend is whether the transaction may be characterized as a sale of stock to the corporation, and that the tests to be applied are, in general, those developed under section 115(g) of the 1939 Code.[4] By far the most important of these tests was whether the redemption was substantially pro-rata—i. e., did it significantly affect the interest which the redeeming shareholder has in the corporation.[5] We think this factor continues to be of greatest weight in interpreting § 302(b)(1), although § 302 (b)(3) contains a specific "safe harbor" based on the reduction of a shareholder's proportionate interest. Many courts also gave weight to the question whether

---

1. Except as is indicated in the next note, petitioner Alice B. McGinty is a party to the proceedings solely because a joint return was filed for the taxable year in question.

2. It appears in the record that the loan was made to Mrs. McGinty in order to avoid state law difficulties inherent in a corporate loan to an officer. Taxpayers do not dispute that she was acting on behalf of Mr. McGinty and that he received the benefit of the loan.

3. S.Rep. No. 1622, 83d Cong., 2d Sess. 49.

4. S.Rep. No. 1622, 83d Cong., 2d Sess. 234, U.S. Code Cong. and Adm.News 1954, p. 4870, "The test intended to be incorporated in the interpretation of paragraph (1) is in general that currently employed under section 115(g)(1) of the 1939 Code. Your committee further intends that in applying this test for the future that the inquiry will be devoted solely to the question of whether or not the transaction by its nature may properly be characterized as a sale of stock by the redeeming shareholder to the corporation. For this purpose the presence or absence of earnings and profits of the corporation is not material."

5. See 1 Mertens, Law of Federal Income Taxation § 9.100 (Oliver Ed. 1962).

there was a genuine corporate business purpose for the transaction.[6] However, we have minimized the importance of this factor in Northup v. United States, 2 Cir., 240 F.2d 304 (1957), and see little reason to accord more weight· to it under the 1954 Code than under the predecessor statute.[7]

■ Considering the 1954 redemption of Berkshire stock as an isolated transaction, there can be no question that it had the effect of a taxable dividend, to the extent of available earnings and profits. Before the redemption Mr. Mc-Ginty owned 100% of the one class of stock and owed the corporation $40,000; after it, he still owned 100% of the stock and owed the corporation nothing. Had the debt simply been cancelled, it would surely have been a dividend; the redemption of some stock in no way changes the effect of the transaction. The taxpayer, however, argues that the redemption should· be considered as the last step of an integrated transaction, the first of which was the purchase of the stock from the trust. Under this view, the corporation would be considered to have redeemed the trust's stock directly from the trust, and, under the principle of Holsey v. Commissioner, 258 F.2d 865 (3 Cir. 1958), there would be no tax consequences to Mr. McGinty, the continuing shareholder. Although taxpayer testified that the redemption was intended to be carried out at the same time as the purchase, and introduced certain corporate records to support his claim, the proof was not of such overwhelming character as to compel a finding of fact which the Tax Court did not make—that the two transactions were part of a single plan. Finally, it is not arguable that, because the corporation might have redeemed the stock directly, the transaction should be viewed as if it

had done so. As we said in Television Industries, Inc. v. Commissioner, 284 F. 2d 322, 325 (2 Cir. 1960), "the Commissioner is justified in determining the tax effect of transactions on the basis in which taxpayers have molded them, * * * although he may not always be required to do so * * *. It would be quite intolerable to pyramid the existing complexities of tax law by a rule that the tax shall be that resulting from the form of transaction taxpayers have chosen or from any other form they might have chosen, whichever is less." See also Woodworth v. Commissioner, 218 F.2d 719 (6 Cir. 1955). Affirmed.

6. See, e. g., Earle v. Woodlaw, 245 F.2d 119 (9 Cir.), cert. denied, 354 U.S. 942, 77 S.Ct. 1400, 1 L.Ed.2d 1537 (1957); Jones v. Griffin, 216 F.2d 885 (10 Cir. 1954); Keefe v. Cote, 213 F.2d 651 (1 Cir. 1954); Commissioner of Internal Revenue v. Snite, 177 F.2d 819 (7 Cir. 1949).

7. Even were we disposed to give weight to the "business purpose" factor in other cases, to distinguish "corporate purpose" from "shareholder purpose" in a corporation completely controlled by a single shareholder seems rather whimsical. See Bradbury v. Commissioner, 298 F.2d 111, 118 (1 Cir. 1962).