Edward J. McCARTHY and Lora R. McCarthy, Plaintiffs-Appellants,

v.

Joseph J. CONLEY, Jr., District Director of Internal Revenue for the District of Connecticut, Defendant-Appellee.

No. 198, Docket 28965.

United States Court of Appeals Second Circuit.

Argued Dec. 3, 1964.

Decided Feb. 23, 1965.

Edward J. McCarthy, Bridgeport, Conn., for appellants.

Robert J. Golten, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Department of Justice, Washington, D. C., Jon O. Newman, U. S. Atty., Hartford, Conn., F. Owen Eagan, Asst. U. S. Atty.), for appellee.

Before FRIENDLY and SMITH, Circuit Judges, and BLUMENFELD, District Judge.*

BLUMENFELD, District Judge:

This is an appeal from a summary judgment adverse to the appellant in a suit for refund of income taxes paid to satisfy deficiency assessments for the years 1954, 1955 and 1956. The taxpayer, Mrs. Lora McCarthy,[1] owned 1000 shares of the stock of The Andrew Radel Oyster Company, a family corporation, which she had acquired through inheritance. In December 1954, she sold her shares to the corporation which paid for them with liquid assets it had accumulated out of earnings and profits over a long period. It was the taxpayer's use of a claimed loss on this transaction to offset income for the years in question that the District Director disallowed.

The court below found that there was no genuine issue of fact which would rebut the District Director's determination that the payment made by the corporation for the purchase of her stock was not a distribution in partial liquidation and ruled that the loss deduction was properly disallowed under § 267 of the 1954 Code. We agree.

The issues before us have been narrowed somewhat. The government has conceded that the payment received by the taxpayer from the corporation escapes dividend tax treatment as a distribution under § 302(b)(3) of the 1954 Code.[2] The taxpayer has conceded that since her two sisters and her two brothers owned the remaining 4000 outstanding shares of stock, the transaction out of which the claimed loss arose was between related taxpayers as defined in § 267(b) and that the recognition of any loss is governed by § 267 of the Internal Revenue Code of 1954.

The foundation of the taxpayer's dispute with the District Director lies in that portion of § 267 which provides:

"(a) Deductions disallowed.

"No deduction shall be allowed—

"(1) Losses.

"In respect of losses from sales or exchanges of property (*other than losses in cases of distributions in corporate liquidations*), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b)." (Emphasis added.)

It is taxpayer's contention here, as it was below, that the payment to her by the

---

* Sitting by designation.

1. Mr. McCarthy is a party solely because he filed joint returns with Mrs. McCarthy for the years in question.

2. "§ 302. Distributions in redemption of stock.

    *    *    *

"(b) Redemptions treated as exchanges.

    *    *    *

"(3) Termination of shareholder's interest.

"Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder."

company constituted a "distribution[s] in corporate liquidation[s]" within the parenthetical exception in § 267(a)(1) and, therefore, that the loss was deductible.[3]

Briefly stated, her first and principal argument for this expansive view of the exception is that partial liquidations as embodied in the phrase "distributions in corporate liquidations" in § 267(a)(1) includes all distributions in redemption of stock which are not essentially equivalent to a dividend. On the premise that the history of what the law has been is necessary to the knowledge of what the law is, she turns to the statutes and regulations to find the meaning of the term "partial liquidation," and necessarily so, for when the concept of "partial liquidation" was first brought to light in the Revenue Act of 1924, "it was not a phrase drawn from the common corporate parlance of the day."[4] The concept of "partial liquidation" which she urges upon us is drawn from the context of certain provisions in the 1939 Code.

She begins by pointing out that § 115 (i)[5] of the 1939 Code said a "partial liquidation" includes "a distribution * * * in complete cancellation or redemption of a part of its stock" by a corporation. Section 115(c)[6] provided that distributions in partial liquidations were to be treated as payment in exchange for the stock. In the same section, § 115(g)(1)[7] said that if a distribution was made "in such manner" as to make the redemption "essentially equivalent to the distribution of a taxable dividend" it should be treated as such to the extent that it represented a distribution of earnings and profits. This is an abbreviated recital of the prior law from which the appellant's interesting three-step thesis emerges. That is, that the redemption of stock in question would have been considered a partial liquidation under § 115 of the 1939 Code. Taxpayer then assumes that it is the definition of partial and complete liquidation under § 115 which would have been used to determine whether a distribution to the taxpayer in exchange for her stock was a "distribution in liquidation" within the exception of § 24(b)(1)(B) of the 1939 Code, predecessor to § 267(a)(1) in the 1954 Code. The final link in the argument is that Congress did not intend to change this theorized result when it

3. No case interpreting this exception or its predecessors has been brought to the attention of this court. In fact, we have been able to discover only one case where a similar problem has arisen. In Estate of Ruth Hanna, 37 T.C. 63 (1961), the court, without discussing the exception, denied recognition of a loss resulting from a § 302 redemption of stock owned by the estate. The case, however, was reversed in 320 F.2d 54 (6th Cir. 1963) on the ground that an estate is not a related taxpayer within the meaning of § 267.

4. Herwitz, Stock Redemptions and the Accumulated Earnings Tax, 74 Harv.L.Rev. 866, n. 56 at 886–87.

5. Section 115(i):
"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

6. Section 115(c):
"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * * *"

7. Section 115(g) (1):
"(g) Redemption of stock.
"(1) In general. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

passed the 1954 Code. While the appellant's assumption may appear to be plausible,[8] since nowhere else in the 1939 Code could one find any other definition of liquidation, there is considerable doubt whether § 115(i) was carried over to § 24, enacted ten years later and without any clear indication in legislative history that a cross-reference was intended. In Commissioner v. Estate of Bedford, 325 U.S. 283, at 291–292, 65 S.Ct. 1157, at 1161, 89 L.Ed. 1611 (1945), the Supreme Court rejected a similar contention, stating:

> "Respondent, however, claims that this distribution more nearly has the effect of a 'partial liquidation' as defined in § 115(i). But the classifications of § 115, which governs 'Distributions of Corporations' apart from reorganizations, were adopted for another purpose. They do not apply to a situation arising within § 112. The definition of a 'partial liquidation' in § 115(i) is specifically limited to use in § 115" (n. 5 omitted).

Also, if § 115(i) were to be lifted into § 24 without qualification, that would produce the weird result that a distribution in liquidation essentially equivalent to a dividend, which, by virtue of § 115 (g)(1), would not qualify as a sale or exchange under § 115(c), would nevertheless be recognized as a loss under § 24.

Whether or not § 115(i) was concerned with § 115 alone under the 1939 Code, the 1954 Code unmistakably eviscerated it.

### The 1954 Code

The 1954 Code divided the relevant portion of § 115(c) into two parts: § 302 [9] in Subchapter C, Part I, entitled "Corporate Distributions" and § 346 [10] coupled with § 331 [11] in Part II, entitled "Corporate Liquidations." It is generally agreed that this division into separate sections was motivated by Congress' desire to dispel the confusion created by the unsuccessful attempt of the cases arising under the 1939 Code to develop either general conformity or clarifying principles in the taxation of distributions in redemption of corporate stock.[12] Mc-

---

**8.** The assumption finds some inferential support in Revenue Ruling 57–387. While this ruling, modifying a Revenue Ruling of the preceding year, holds directly contra to the appellant's main contention, it does state that this is due to the change in the definition of "partial liquidation" in the 1954 Code and it clearly infers that the result would have been different under the earlier code.

**9.** The pertinent portion of § 302 reads:
"(a) General rule.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.
"(b) Redemptions treated as exchanges.—
"(1) Redemptions not equivalent to dividends.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend."

**10.** The pertinent portion of § 346 reads:
"(a) In general.—For purposes of this subchapter, a distribution shall be treated

as in partial liquidation of a corporation if—

> \* \* \*

"(2) the distribution is not essentially equivalent to a dividend, is in *redemption of a part of the stock of the corporation* pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year, including (but not limited to) a distribution which meets the requirements of subsection (b)."

**11.** The pertinent portion of § 331 reads:
"(a) General rule.—
> \* \* \*

"(2) Partial liquidations.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock."

**12.** The Senate report, U.S.Code Cong. & Adm.News 1954, Vol. 3, p. 4680, states:
"Existing law is complicated by the fact that stock redemptions are included within the terms of the partial liquidation provisions. \* \* \*
"Your committee, as did the House bill, separates into their significant ele-

Ginty v. Commissioner, 325 F.2d 820 (2d Cir. 1963). See United States v. Carey, 289 F.2d 531 (8th Cir.1961); Friend v. United States, 226 F.Supp. 814 (D.Mass.1964).

As stated in McGinty v. Commissioner, supra, 325 F.2d at 821, it was

"in an effort to promote greater certainty in the area, [that] Congress made several changes in the comparable provisions under the 1954 Code. Where, under the 1939 Code, changes in both the shareholder's relation to the corporation and in the scope of the corporation's activity were held relevant to the question of dividend equivalence, it is clear that under § 302 of the 1954 Code only the former are relevant. 'Corporate contraction' is to be considered in determining whether a distribution in redemption of stock is a partial liquidation under § 346" (n. 3 omitted).

But in connection with the problem in this case, there is some difficulty in determining what effect these changes were to have on the scope of the exception in § 267, Subchapter B, Part IX of the 1954 Code.

■ It is true that there is nothing in the congressional reports of 1954 to indicate that in revising the treatment of corporate distributions Congress was at all cognizant of the effect on § 267. Nor does the text of the law or legislative history express any rationale for the exception either to begin with or when the change was made in 1954. Yet, even in the absence of a direct cross-reference between § 267 and § 346, there are convincing indications that the "corporate liquidations" exception of § 267, at least today, is to be limited to corporate liquidations and partial liquidations as defined in § 346.

ments the kind of transactions now incoherently aggregated in the definition of a partial liquidation. * * *" Additional legislative history, several prior cases, and treatise commentary are cited in United States v. Carey, supra, 289 F.2d 531.

Under the 1939 Code, the exception in § 24(b) (1) (B) was phrased, "except in the case of distributions in liquidation." This same phrase constituted the title of § 115(c), "Distributions in Liquidations," which extended the benefit of capital gains treatment to both complete and partial liquidations as then defined in § 115(i). But the exception in § 267 (a) now reads, "other than losses in cases of distributions in corporate liquidations." This terminology parallels the heading Part II of Subchapter C of the 1954 Code which is entitled "Corporate Liquidations" and it is in Part II that § 346 is found. However, § 302 has been placed in Part I of Subchapter C, which is entitled "Distributions by Corporations." Against the aid afforded by this identity of language, there is not the slightest foundation in the 1954 Code for the appellant's argument that Congress meant that tax authorities should look elsewhere for a different test of corporate liquidation to be applied to family transactions.

Under § 267(b) (2) non-recognition of loss depends upon the existence of a family relationship among the stockholders who control the corporation.[13] Section 24(a) (6) of the Revenue Act of 1934, 48 Stat. 680, 691, the first ancestor of § 267, was strictly applied by the courts. In McWilliams v. Commissioner, 331 U.S. 694, at 699, 67 S.Ct. 1477, at 1480, 91 L.Ed. 1750, 170 A.L.R. 341 (1947), the Supreme Court said:

"Section 24(b) states an absolute prohibition—not a presumption—against the allowance of losses on any sales between the members of certain designated groups. The one common characteristic of these groups is that their members, although distinct legal entities, generally have a near-identity of economic interests. It is a fair inference that

13. Even before the enactment of any applicable statute, a loss on a transfer by a taxpayer to his controlled corporation was not recognized for tax purposes. Higgins v. Smith, 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406 (1940).

even legally genuine intra-group transfers were not thought to result, usually, in economically genuine realizations of loss, and accordingly that Congress did not deem them to be appropriate occasions for the allowance of deductions" (n. 12 omitted).

And at 700, 67 S.Ct. at 1481, the Court

"conclude[d] that the purpose of § 24(b) was to put an end to the right of taxpayers to choose, by intra-family transfers and other designated devices, their own time for realizing tax losses on investments which, for most practical purposes, are continued uninterrupted."

Ordinarily, the sale of stock is the same as the sale of any other property. Yet, in the case of a total liquidation, there is no difficulty in determining whether or not a loss has been incurred by all of the members of the family who joined the corporation's venture. This could account for the exception in § 267(a). But, where the shares of only one family member are redeemed by a family corporation, "an economically genuine realization of loss" to the family is somewhat obscured. As a group, they still hold 100% of the outstanding stock and the corporate enterprise may remain intact. If the exception in § 267 for losses in distributions in corporate liquidations were to be read to include any distribution not equivalent to a dividend which does not result in a complete liquidation, this would hardly constitute "an economically genuine realization of loss." This test cannot be satisfied by anything less than a discontinuance of a proportionate amount of that business enterprise. This can be determined only by the "corporate contraction" test. In the absence of a "contraction," sales of stock to the corporation should be treated no differently than a sale of stock to any other member of the family. A mere disproportionate redemption or a termination of a shareholder's interest so as to qualify for capital gains treatment under § 302 is not sufficient.[14]

Appellant's second argument is that even if the § 267 exception is limited to partial liquidations as defined in § 346, that definition includes all distributions in redemption which are not essentially equivalent to a dividend. This argument differs from her previous one only in that she makes it with reference to the definition of partial liquidation now found in § 346 of the 1954 Code instead of to the earlier one in § 115(i) of the 1939 Code. We were unable to expand the exception in § 267 to make room for distributions not essentially equivalent to a dividend without regard to the definition of "partial liquidation" in § 346. We are equally unable to hold that a distribution not essentially equivalent to a dividend standing alone is a "partial liquidation" within that definition.

It is true that §§ 302 and 346 both contain the phrase "not equivalent to a dividend." But a reading of all the legislative history reveals congressional purpose to effect a *separation* of the two main tests which had formerly been applied to distributions in redemption of stock.[15] Thus, the fact that the distribu-

---

14. We are importuned to adopt appellant's interpretation by her plea that the increase in basis to the extent of the loss, which would normally be available to a purchaser from her on a subsequent resale, to reduce future gain as provided in § 267(d), is not available to the corporation. See § 1032. The argument is neither pertinent nor meritorious. Until 1954, Congress saw no need to grant any amelioration whatsoever, and apparently her fellow family members were not willing to take advantage of that which was provided by purchasing her shares individually rather than through the corporation.

15. The Senate report states: "Such portion of section 115(c) of the 1939 Code which provides for capital-gains treatment where the redemption does not terminate a part of the business of the corporation is, under your committee's bill, treated under section 302, or section 301, as the case may be [rather than under § 346]." S.R.No. 1622, 3 U.S.Code Cong. & Adm.News 1954, p. 4892. See McGinty v. Commissioner, supra, 325 F.2d 820;

tion received by her was not essentially equivalent to a dividend under § 302 because it resulted in a complete termination of her interest has no relevance here. Section 346 is plainly designed to go further in its demands. This is made all too clear by the specification in § 346(c):

> "The fact that, with respect to a shareholder, a distribution qualifies under section 302(a) * * * by reason of section 302(b) shall not be taken into account in determining whether the distribution, with respect to such shareholder, is also a distribution in partial liquidation of the corporation." [16]

■ Taxpayer then takes another stand to argue that in any event contraction is not an absolutely essential element for a distribution to qualify under § 346. She relies upon the following portion of the Senate report as support for this contention:

> "Subsection (a) [of § 346] is intended to provide a definition of partial liquidation which replaces that contained in section 115(i) of the 1939 Code. *Primarily*, this definition involves the concept of 'corporate contraction' as developed under existing law." (S.R.No.1622, 83d Cong. 2d Sess. 262, 3 U.S.Code Cong.

& Adm.News 1954, p. 4899.) (Emphasis added)

Had Congress used the word "includes" in the § 346 definition of partial liquidation, we would be faced with 26 U.S.C. § 7701(b) of the 1954 Code: "The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." But reading the Senate report in context, the word "primarily" is not misleading. It was not used to create a larger category of "partial liquidations," but to accent a predominant characteristic common to all which come within the statutory definition. It means that other requirements also have to be met, not a non-exclusivity allowing the use of all of the old pre-1954 tests. The requirements in § 346(a) (2) are not in the disjunctive. Thus, for a distribution to receive tax treatment as a partial liquidation, three requisites must be met: (1) It must not be essentially equivalent to a dividend; (2) It must be in redemption of part of the stock pursuant to a plan; and (3) It must occur within the taxable year.

However, it is urged that the term "partial liquidation" may include redemptions resulting from activities at the corporate level, or prompted by corporate

---

United States v. Carey, supra, 289 F.2d 531; Friend v. United States, supra, 226 F.Supp. 814.

16. Another significant indication of this separation is the fact that by § 302(c) (1) the attribution rules of § 318 are made applicable to distributions received under § 302, but by no provision are they made applicable to § 346. This absence of any rules of attribution applicable to § 346 is understandable. Congress forcibly stressed the concept of corporate contraction in its definition of partial liquidation; and that concept is complete without any reference whatsoever to the corporation's shareholders. A change in the position of a shareholder with relation to the corporation or the other shareholders is without significance. And maybe this is what was meant by the use of the term "partial liquidation" when it was first introduced, i.e., the business-

man's concept of the winding up of a part of a business enterprise, and not merely a reduction in the number of shares outstanding. Cf. Farmers Union Corp. v. Commissioner, 300 F.2d 197 (9th Cir.), cert. denied, 371 U.S. 861, 83 S.Ct. 117, 9 L.Ed.2d 99 (1962).

The taxpayer has argued that it is anomalous to require the distribution to her to pass the attribution rules in § 267 as well as those in § 318. We find no such inconsistency. Our present holding merely recognizes that Congress allowed capital gains treatment as opposed to dividend treatment to be given to certain distributions in a closed-corporation transaction, but required different and indeed more stringent attribution tests to be met to allow the recognition of a loss. Indeed, since all of the other shareholders were brothers and sisters of the appellant, she could not run afoul of *any* of the § 318 rules.

needs, even though not involving a contraction. See Brodsky, Partial Liquidation: Definition of Partial Liquidation and Rules for Determining Termination of a Business, 15 Institute on Federal Taxation 539, 552 (1957). Examples suggested of such corporate needs are a corporation's desire to improve its credit rating or to make stock available to its employees. We find it unnecessary to pass upon this contention, for the only non-contraction purpose put forth by the taxpayer was a statement by her two brothers that they permitted the redemption to enable them alone to dissolve the corporation, *if they later so desired.* Under no theory could this be considered a corporate purpose. This was nothing other than a shareholder purpose, for it merely satisfied the wish of her brothers to gain control of the corporation to carry out their own ends.

The only question remaining is whether there was a "corporate contraction" pursuant to a "plan" under § 346. Both parties moved for summary judgment. The case was ripe for such disposition. It was not contended that there was a termination of a separate trade or business which would specifically qualify as a partial liquidation under § 346(b). Nor do we find any call for making a value judgment as to how much "corporate contraction" is necessary to constitute a partial liquidation under § 346(a). In determining that there was no genuine issue of fact as to whether there

had been a partial liquidation, the court below properly took into account the concept of "corporate contraction" as developed under existing law by focusing attention on what took place at the corporate level. Nothing substantial was offered to challenge the District Director's determination that there was no immediately intended contraction of the corporation's business of producing, harvesting and selling oysters; a sale of certain oyster lands and facilities four years later, on the death of one of the two managing brothers, was properly deemed unrelated by the district judge. The purchase price of $128.50 per share was based on the then value of the *quick assets* of the firm other than inventory, less liabilities.[17] Nor were any balance sheets or operating statements presented in opposition to the appellee's motion for summary judgment.

The transaction in question was clearly not a vertical liquidation which chopped off a part of the productive resources of the enterprise. That portion of corporate capital remained intact. It was a horizontal slice off the top of a nest egg of securities accumulated from past earnings and profits which did not in any degree impair the business activities of the enterprise as they had been carried on before.[18]

Nor, as held by the court below, did anything exist to indicate a "plan."

The judgment is affirmed.

---

17. Although in excess of the $100 par, this was substantially less than the fair market value of the shares at the time of the deaths of her father and her mother which was the basis she used to compute the loss. Cf. Twining v. Commissioner, 83 F.2d 954 (2d Cir.), cert. denied, 299 U.S. 578, 57 S.Ct. 42, 81 L. Ed. 426 (1936).

18. Furthermore, the taxpayer did not deny that profits from the accumulated securities amounted to more than half a million dollars during the decade between

1950 and 1960. It was the proceeds of the sale of some of these securities that were used to effect the redemption, and while it is urged that they had been held as a contingency fund, the following passage from the Senate report on the Tax Code directly rejects that argument:

"It is intended that a genuine contraction of the business as under present law will result in a partial liquidation. * * * However, a distribution of a reserve for expansion is not a partial liquidation." (3 U.S.Code Cong. & Adm.News 1954, p. 4899.)