Donald L. MAINS and Joyce G. Mains,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

F. E. GOODING, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 74–1469.

United States Court of Appeals,
Sixth Circuit.

Jan. 13, 1975.

H. Thompson Nicholas, Jr., Cincinnati, Ohio, Bruce W. Powell, Powell & Powell, Columbus, Ohio, for plaintiffs-appellants.

William W. Milligan, U. S. Atty., Columbus, Ohio, Scott P. Crampton, Meyer Rothwacks, Gilbert Andrews, Gary R. Allen, Louis Bradbury, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before WEICK and ENGEL, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WEICK, Circuit Judge.

The suits in the District Court were for refund of federal income taxes paid for the year 1966 by taxpayers Donald L. and Joyce G. Mains, in the amount of $8,025.01, plus interest, and by taxpayer F. E. Gooding in the amount of $105,578.64, plus interest. Claims for refund had been timely filed and were disallowed.

The cases were consolidated for trial and were heard by the District Court without a jury. The District Court, in a written opinion, held that distribution of the entire proceeds of sale of a portion of the capital assets of Gooding Amusement Company, Inc. and Thrills Unlimited, Inc., amounting to $363,632, made to the shareholders of the corporations, was not entitled to capital gain treatment under § 331 of Title 26 of the Internal Revenue Code as being made in partial liquidation of the corporations, but was dividends properly taxable as ordinary income.[1]  372 F.Supp. 1093 (S.D.Ohio, 1974). Judgment was entered in favor of the Government, and taxpayers appealed.[2]

Mr. Gooding owned 64.3% of the stock of Gooding Amusement, 60% of the stock of Thrills Unlimited, both Ohio corporations, and was the chief executive officer of said corporations. Mr. Gooding's daughter, Joyce G. Mains, owned 16.6% of the stock of Gooding Amusement, and 35.7% of the stock of Thrills Unlimited. Donald Mains is the husband of Joyce G. Mains.

Gooding Amusement was engaged in carnival business, contracting with fairs, trade shows, and expositions to provide rides and other forms of entertainment. Thrills Unlimited was incorporated to own certain large, dangerous rides, and to lease them to Gooding Amusement for a percentage of the gross receipts.

Gooding Amusement was divided into ten operating units, of which the most profitable was unit number three, called the "Southern Route." In the year ending July 31, 1966 the Southern Route provided 38% of the gross income of Gooding Amusement, and 47.91% of its expenses.

In contrast to the other units, the Southern Route had some equipment which was used exclusively by it; and its

---

1. Both corporations had accumulated earnings and profits exceeding the amount of the distribution made by the respective corporations. Under IRC § 331(a)(2) distributions made in partial liquidation of a corporation are treated as made in part or in full payment in exchange for the stockholder's stock. If the stock qualifies as a capital asset in the stockholder's hands, any gain is capital gain.

2. F. E. Gooding died on August 14, 1972, and his estate was substituted as a party plaintiff to this action.

playing contracts remained almost the same from year to year. The Southern Route's general manager, Hal Eifort, controlled its day to day operation on the road, and was only lightly supervised by Gooding Amusement's home office in Columbus, Ohio.

Gooding Amusement kept its books and records at its home office and had its bank account there for all operations. It purchased all the equipment used by the Southern Route, paid any privilege deposits required by fair boards, and made most of the expenditures required for ticket printing and advertising. However, Mr. Eifort arranged and paid for newspaper advertising for the various playing dates.

During the "off season" all of the rides and equipment were stored in one place on Gooding's property.

On April 5, 1966 Gooding Amusement and Thrills Unlimited adopted plans of complete liquidation pursuant to IRC § 337. The following day Gooding Amusement contracted to sell the Southern Route's equipment, contracts, and trade name to a Delaware corporation for $350,000. Gooding Amusement also agreed not to compete with the purchaser for one year. Concurrently Thrills Unlimited contracted to sell a ride, called the "Mad Mouse," to the Delaware corporation for $25,000. The purchaser was given an option to buy the remaining assets of the two corporations within one year, but it did not exercise the option. The entire proceeds of sale, totaling $363,632, were distributed to the shareholders of the two corporations.

Both corporations filed information returns of said plans pursuant to IRC § 337.

Gooding Amusement and Thrills Unlimited were unable to liquidate within one year and therefore could not avail themselves of the advantages of IRC § 337. On March 24, 1967 they amended their plans of liquidation to plans of partial liquidation. The corporations filed information return forms 966 describing the plans as plans of partial liquidation under IRC §§ 331(a)(2) and 346(a)(2).

The corporations had substantial accumulated earnings and profits and liquid assets.[3] Although their incomes were substantial, dividends were relatively small.

Because of the ill health of Mr. Gooding the corporations later entered into a management contract with an unrelated corporation, including an option to purchase the stock or assets. While this appeal was pending the option was exercised, according to statements in appellants' reply brief.

Distributions by a corporation to its shareholders receive ordinary income treatment under IRC §§ 301 and 316, assuming adequate earnings and profits, unless the Internal Revenue Code provides otherwise. One of the exceptions is a distribution made in partial liquidation of a corporation. IRC § 331(a)(2). "Partial liquidation" is defined in IRC § 346 which is set out in relevant part in footnote 4.[4] The District Court conclud-

---

3. On August 31, 1966, after Gooding Amusement had distributed $346,009 as a partial liquidating dividend, and $8,540 as an ordinary dividend, it had earned surplus of $1,364,453 and current assets and investments of $1,177,350. Total assets were $1,942,462. A similar situation, albeit on a smaller scale, obtained with Thrills Unlimited.

4. Section 346. Partial Liquidation Defined.
   (a) *In general.*—For purposes of this subchapter, a distribution shall be treated as in partial liquidation of a corporation if—
      (1) the distribution is one of a series of distributions in redemption of all of the stock of the corporation pursuant to a plan; or

   (2) the distribution is not essentially equivalent to a dividend, is in redemption of a part of the stock of the corporation pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year, including (but not limited to) a distribution which meets the requirements of subsection (b).

For purposes of section 562(b) (relating to the dividends paid deduction) and section 6043 (relating to information returns), a partial liquidation includes a redemption of stock to which section 302 applies.

   (b) *Termination of a business.*—A distribution shall be treated as a distribution de-

ed that the distributions were not made in partial liquidation of the corporations pursuant to IRC §§ 346(a)(2) and 346(b). The Court held that the pretrial order in the case precluded consideration of IRC § 346(a)(1), but stated in a footnote that the distributions could not qualify under that subsection in that there had been no series of distributions in redemption of *all* of the stock of the two corporations. 372 F.Supp. 1093, 1104, n. 11.

■ There is no question as to this Court's standard of review. A District Court finding that a distribution was not made in partial liquidation, but was essentially equivalent to a dividend, is a finding of fact which cannot be disturbed unless it is clearly erroneous or was induced by an erroneous view of the law. United States v. Carey, 289 F.2d 531, 537 (8th Cir. 1961); Estate of Chandler v. Commissioner of Internal Revenue, 228 F.2d 909 (6th Cir. 1955).

We will now consider the sections of the Internal Revenue Code which taxpayers claim require capital gains treatment.

## I

### IRC § 346(a)(2)

■ The only requirement of § 346(a)(2) which is in issue is whether the distributions by the corporations were "not essentially equivalent to a dividend." According to the legislative history of the section, qualification under this subsection depends primarily on the existence of a bona fide corporate con-

traction. Such a corporate contraction qualifies to the same extent as under previous law. 3 1954 U.S.Code Cong. & Ad.News, p. 4680, 4899.

From the stockholder's point of view a pro rata distribution in partial liquidation of a corporation is similar to an ordinary dividend. Distributions in partial liquidation are "characterized by what happens solely at the corporate level . . . ." 3 1954 U.S.Code Cong. & Ad.News, at 4680, although §§ 331 and 346 are concerned with the tax treatment of the shareholder.

Because a distribution qualifying under § 346(a)(2) possesses many of the characteristics of a dividend taxed at ordinary income rates, the sale or distribution of assets claimed to constitute a corporate contraction must be a significant event in the history of the corporation if sale or distribution of assets is not to become a convenient pretext for bail-out of earnings and profits at capital gain rates.[5] Bittker & Eustice, Fed. Income Taxation of Corporations & Shareholders, ¶ 9.52, 3d Ed.

The District Court held that the sale and distribution was not a § 346(a)(2) contraction. The Court stated that a corporation must sell and distribute a significant percentage of its net worth, and that the percentages attributable to the sales of the Southern Route and the Mad Mouse, 5.19% and 1.41% respectively, were not significant. In addition the Court stated that purchases of new equipment after the sale, by the two corporations, resulted in no real contraction

scribed in subsection (a)(2) if the requirements of paragraphs (1) and (2) of this subsection are met.

(1) The distribution is attributable to the corporation's ceasing to conduct, or consists of the assets of, a trade or business which has been actively conducted throughout the 5-year period immediately before the distribution, which trade or business was not acquired by the corporation within such period in a transaction in which gain or loss was recognized in whole or in part.

(2) Immediately after the distribution the liquidating corporation is actively engaged in the conduct of a trade or business, which trade or business was actively conducted throughout the 5-year period ending

on the date of the distribution and was not acquired by the corporation within such period in a transaction in which gain or loss was recognized in whole or in part.

5. One justification offered for distinguishing the tax treatment given distributions in partial liquidation after a corporate contraction from the tax treatment of ordinary dividends, is that in the case of a corporate contraction and distribution "the stockholders no longer retained a continuing interest in the *same* business but rather in a materially reduced one." 1 Mertens, Law of Fed. Income Taxation, § 9.69. This rationale contemplates that the contraction is a significant event in the history of the corporation.

at all, and that business activity, measured by the number of playing days, was not appreciably affected.

■ The taxpayers contend that this Court should not regard Thrills Unlimited as having a corporate existence separate from Gooding Amusement for purposes of determining the applicability of § 346(a)(2) to distributions made by Thrills Unlimited. They argue that Thrills Unlimited's only business was to lease equipment to Gooding Amusement, and therefore its fortunes were tied closely to the fortunes of Gooding Amusement. However, the taxpayers offered no evidence that Thrills Unlimited and Gooding Amusement were not treated as two distinct corporations. Thrills Unlimited was not a subsidiary of Gooding Amusement, and Gooding Amusement had a number of shareholders who were not shareholders of Thrills Unlimited. Distributions from Thrills Unlimited must qualify independently, if they qualify at all.

The District Court found that Thrills Unlimited purchased new equipment in the year of the sale and during the following two years for amounts totaling approximately $149,000, about six times the sale price of the Mad Mouse, and that Thrills Unlimited was engaged in a plan of expansion. These findings are supported by the evidence. Doris Relyea testified concerning equipment purchases made by Thrills Unlimited, and admitted writing a letter to the Internal Revenue Service to justify the accumulation of earnings and profits in Thrills Unlimited, stating that Thrills had plans to expand.

■ It is clear that in the year of the sale and during the years immediately following, Thrills Unlimited expanded its commitment of capital to equipment. In order for a distribution to qualify as a distribution in partial liquidation under § 346(a)(2) the amount of capital actually committed to the corporate business must be significantly reduced. Rev.Rul. 67–299, 1967–2 Cum.Bull. 138; Estate of Charles D. Chandler, 22 T.C. 1158, 1166 (1954), aff'd, 228 F.2d 909 (6th Cir. 1955).

■■ Although a sale or other disposition of assets may be a potential corporate contraction, there is no contraction if funds are used to expand another part of the business so that the potential contraction is offset.

The book value of the equipment sold by Gooding Amusement as the Southern Route was $98,237. During the fiscal year of the sale it purchased $100,740 of new equipment. The taxpayers point out that Gooding Amusement purchased some equipment every year to replace old equipment, and they assert that even after a plan of liquidation was adopted such purchases were necessary to maintain the company's contracts and goodwill.

Purchases were $77,702 in 1965 and $62,173 in 1964 fiscal years. An examination of Gooding Amusement's balance sheets indicates that the company did not expand its capital commitment to productive assets prior to 1966.

■ Where a corporation regularly replaces worn equipment, purchases of such equipment in amounts not substantially exceeding previous years' purchases should not be regarded as an expansion of the business. However, Gooding Amusement purchased equipment in 1966 which exceeded that purchased in the years immediately preceding. At least to the extent of a substantial increase in the amount spent for purchases of equipment, the District Court can consider such purchases as expansion of the remaining business to compensate for the sale of the Southern Route.

■ The District Court used a net worth test to determine that there had been no contraction, not taking into account the purchase of new equipment. Determination of whether there exists a corporate contraction must be made on the facts of each case. The relative percentage of the assets sold to the entire net worth of the corporations is only one factor to be considered. Certainly the approximate percentage of the productive assets of the corporation, including working capital, equipment, and inventory, attributable to the assets disposed of,

is of basic importance. That percentage must be substantial. Rev.Rul. 67–299, 1967–2 Cum.Bull. 138; Estate of Charles D. Chandler, *supra.* See McCarthy v. Conley, 341 F.2d 948, 955 (2d Cir. 1965).

Considering the increased purchase of equipment and the relatively small fraction of the assets disposed of, the District Court's finding that there was not a contraction is supported by substantial evidence, and is not clearly erroneous.

## II

### IRC § 346(b)

The only requirement of this subsection that is in issue is that the distribution be "attributable to the corporation's ceasing to conduct . . . a trade or business . . . ." The issue is whether the Southern Route constituted a trade or business. Treas.Reg. § 1.346–1(c)(2) (1955) refers to Treas.Reg. § 1.355–1(c) for a definition of the term "active conduct of a trade or business." Treas.Reg. § 1.355–1(c) (1955), in pertinent part, is as follows:

. . . [A] trade or business consists of a specified existing group of activities being carried on for the purpose of earning income or profit from only such group of activities, and the activities included in · such group must include every operation which forms a part of, or a step in, the process of earning income or profit from such group. Such group of activities ordinarily must include the collection of income and the payment of expenses.

■ Some overlap between the trade or business and the remainder of the corporation must be expected. Rev.Rul. 56–451, 56 Cum.Bull. 208 concerned a corporation which published four trade magazines. The magazines had separate offices, separate editorial and advertising sales staffs, and separate accounts on the books of the corporation. However, the general officers of the corporation and, of more importance, the production

workers served all of the magazines. The Internal Revenue Service held that the metal trade magazine was a trade or business separate from the rest for purposes of IRC §§ 355, 361, and 368. See also Treas.Reg. § 1.355–1(d), Example 15.[6]

Blaschka v. United States, 393 F.2d 983, 184 Ct.Cl. 264 (1968), identifies two major factors in determining the existence of an actively conducted trade or business. The first requirement is that each of the parts alleged to constitute a trade or business must produce a substantial part of the combined corporate income. The second requirement is that there be some form of separation of supervision and control.

■ There is no question that the Southern Route provided a large part of the total income of Gooding Amusement. If it was a trade or business it was an actively conducted trade or business. However, the Southern Route did not include every step in the process of earning income. Several important operations were conducted by the home office. The same evidence shows that there was no real separation of control, although the Southern Route's general manager necessarily controlled its day to day operations in the field.

Mr. E. C. Redman testified that privilege deposits were paid by the home office, tickets were bought, and major advertising expenditures, such as for color posters, also were made by the home office. New equipment was purchased by the home office, and the equipment used by all units was stored at a common place, with no apportionment of overhead. This indicates that Mr. Eifort's control of the Southern Route was limited to its operation while it traveled its route, and also that the Southern Route did not pay all of its expenses.

Moreover, Mrs. Relyea testified that during the time of Mr. Gooding's ill health, when Mr. Eifort, by reason of the good relationships that he had built with

---

**6.** Separate manufacturing plants owned by one corporation, but having a common sales outlet, are separate trades or businesses. Blaschka v. United States, 393 F.2d 983, 991,

184 Ct.Cl. 264 (1968), distinguishes this example. "Each plant was a viable entity, capable of producing the product from beginning to end."

the fair boards, was negotiating for the Southern Route contracts, she (Mrs. Relyea) sat in on some of the sessions. This shows the existence of lack of separation of supervision, although circumstances made only light supervision necessary.

In our opinion the District Court's determination that the Southern Route did not constitute a separate trade or business, is supported by substantial evidence and is not clearly erroneous.

### III
### IRC § 346(a)(1)

The District Court held that the final pretrial order precluded reliance by the taxpayers on IRC § 346(a)(1).[7] We disagree.

The first pretrial order provided:

E. Issues—

Whether or not the items of income received by the plaintiffs for the calendar year ending December 31, 1966 from Gooding Amusement Co. and Thrills Unlimited, Inc. were ordinary dividends or partial liquidation dividends.

There is nothing in this order which limits the taxpayers to any particular section of the Internal Revenue Code.

The final pretrial Order contained in the Appendix, on which the District Court relied, is in relevant part as follows:

### IV. AGREED STATEMENTS AND LISTS:

A. General Nature of the Claims of the Parties

1. The plaintiffs claim that distributions received by them in 1966 as stockholders of Gooding Amusement Company, Inc. and Thrills Unlimited, Inc. qualified as partial liquidations under Section 346 of the 1954 Internal Revenue Code.

---

**7.** Despite this holding the District Court in fn. 11 of its opinion, stated:

In any event, the sales in question would not qualify as a partial liquidation under

2. The defendant claims that the distributions do not qualify as partial liquidations, in which case they are taxable to the plaintiffs as dividends.

\*    \*    \*    \*    \*    \*

C. Issues of Fact and Law

Whether the distributions in question qualify as partial liquidations under Section 346(a)(2) or Section 346(b) of the 1954 Internal Revenue Code.

In the case of Section 346(a)(2), qualification depends upon whether plaintiffs can establish that the distributions were "not essentially equivalent to a dividend."

In the case of Section 346(b) qualification depends upon whether plaintiffs can establish that the distributions were attributable to the termination of an "actively conducted \* \* \* trade or business" within the meaning of that section. (A. 17–18)

It will be noted therefrom that A–1. of the Order states the nature of the claim of the taxpayers, that the distributions "qualified as partial liquidations under Section 346 of the 1954 Internal Revenue Code." This would include subsection (a)(1) as well as (a)(2) and (b). The fact that the Government in A–2. did not agree with that claim does not prevent the taxpayers from asserting it.

In the Government's brief the following statement was made:

This issue was not listed in the pretrial order and indeed, taxpayers' counsel stated at trial that the provisions of Section 346(a)(1) dealing with complete liquidations were not applicable to this case. (p. 14)

It was further stated in the Government's brief:

Counsel for taxpayers conceded in his opening statement at trial that Section 346(a)(1) was not involved herein stating (I–R. 22):

Section 346(a)(1) in that there has been no series of distributions in redemption of *all* of the stock of the two corporations.

The second definition [346(a)(2)]—the first one does not apply in our case since we do not have a complete liquidation—which is the one that the case revolves about * *.

After denying this was an issue in the case and after all the evidence had been introduced on that basis, taxpayers turn about and raise the issue for the first time in their post-trial brief. (p. 37).

An examination of the court reporter's transcript of opening statements of counsel reveals that the above statements attributed (in the government's brief) to taxpayers' counsel, were not made by him, but on the contrary they were made by Mr. Thomasch, who was counsel for the Government.

The opening statement of counsel for the taxpayers contained, among others, the following statements:

■ * * * The Internal Revenue Code sections that we are immediately concerned with are Sections 331 and 346 of the Internal Revenue Code of 1954.

These sections define and provide for exchange or capital treatment with respect to shareholders on distributions made in connection with partial liquidations of corporations.

Section 346 defines partial liquidation in three different terms:

(1) One of a series of distributions made—

THE COURT: Let's not go into that, Mr. Nicholas. Just tell me, in a general way, without going into the sections applicable, what you expect to prove here today and by whom you expect to prove it.

MR. NICHOLAS: I expect to prove

(1) that the distribution, the disposition made in 1966, was a partial liquidation and a definite substantial contraction in the activities of the Gooding Amusement Company;

(2) that this was part of the complete plan of [8] liquidation that has never been abandoned, and which in fact is being implemented right today, right now;

(3) I intend to prove that this Southern route was a distinct, autonomous operating business unit in itself, and the termination qualified as a partial liquidation under Section 346.

That's specifically, Your Honor, what I think our evidence is going to show in detail, the documentary evidence. (App. 21–22).

One of the purposes which the pretrial conference serves is to expedite disposition of cases by simplifying the issues and eliminating surprise. Rule 16 of the Federal Rules of Civil Procedure provides that the pretrial order "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustices."

Rule 15(b) of Fed.R.Civ.P. provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

■ Where an issue, not included in the pretrial order, is actually tried by the parties, the aforementioned policies served by Rule 16 would not be served by the trial Court's refusal to consider the issue. Rule 16 should be read in the light of Rule 15(b). Wallin v. Fuller, 476 F.2d 1204, 1209–1210 (5th Cir. 1973); Bucky v. Sebo, 208 F.2d 304, 305 (2d Cir. 1953). See Mayfield v. First Nat'l. Bank, 137 F.2d 1013, 1016 (6th Cir. 1943).

■ As discussed below, the continuing existence of a plan of complete liquidation is relevant to a partial liquidation under § 346(a)(1). It is irrelevant to the existence of a partial liquidation pursuant to § 346(a)(2) or § 346(b).

■ F. E. Gooding, by codicil to his Will, directed his executors either to sell his stock in Thrills Unlimited and Gooding Amusement or to vote the stock for liquidation. The Will and Codicil were admitted as plaintiffs' Exhibit 23, without objection by the Government. E. C.

**1260**

Redman, who was an accountant for and a director of Gooding Amusement, testified that efforts were made to find a purchaser for the balance of the two corporations after the sale of the Southern Route; and Doris Relyea, an officer and director of the two corporations, testified that the corporations continued to have plans of complete liquidation. (App. pp. 40, 41, 42, 77, 78, 82, 83.) All of this evidence was admitted without objection.

Finally, Government counsel cross-examined Mr. Redman, attempting to elicit his agreement that § 346(a)(1) could not apply. (App. pp. 100, 101.)

The opening statements by both taxpayers' and Government counsel indicate that they each intended to make § 346(a)(1) an issue in the case.

No evidence pertaining to partial liquidation under § 346(a)(1) was excluded by the trial Court; however, there were no findings of fact nor conclusions of law adopted concerning the applicability of § 346(a)(1) to the distributions. We decline to regard footnote 11 of the trial Court's opinion as adequate consideration of this important issue. The Court stated that the distribution would not qualify because there had been no series of distributions in redemption of all of the corporations' stock.

The series of distributions leading to a complete liquidation need not be completed by the time an action is brought or a judgment is rendered. Maguire v. Commissioner of Internal Revenue, 222 F.2d 472 (7th Cir. 1955).

The only real question in this case concerning the subsection is whether the taxpayers clearly proved that there was a settled and continuing informal plan to liquidate the corporations. Blaschka v. United States, 393 F.2d 983, 988, 184 Ct.Cl. 264 (1968); Maguire v. Commissioner of Internal Revenue, *supra,* 222 F.2d at 479; Horn & Hardart Baking Co. v. United States, 34 F.Supp. 89, 90 (E.D. Pa.1940). There is conflicting evidence on this issue. The District Court must also· consider the alleged exercise of the option made during pendency of the appeal.

 In no event would we want to hold that an otherwise valid claim for refund should be denied by a Court merely because the claimant may have also relied on inapplicable subsections of a section of the Internal Revenue Code.

The judgment of the District Court is affirmed as to the claims under Sections 346(a)(2) and 346(b) of the Internal Revenue Code, and is reversed as to the claim under Section 346(a)(1), and is remanded for a new trial on said Section 346(a)(1) claim.

It is ordered that two-thirds of the costs be assessed against appellants and one-third against the United States.