**KENTON MEADOWS COMPANY, INC., A West Virginia Corporation, Kenton Meadows and Acel I. Meadows, Husband and Wife, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 84–2283.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1985.

Decided June 26, 1985.

Rehearing Denied July 23, 1985.

David K. Higgins, Charleston, W.Va. (Robinson & McElwee, Charleston, W.Va., on brief), for appellants.

Thomas M. Preston, Washington, D.C. (Michael L. Paup, Jonathan S. Cohen, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and WARD, District Judge for the Middle District of North Carolina, sitting by designation.

HIRAM H. WARD, District Judge.

One corporate and two individual taxpayers challenge the June 25, 1984 decision of the United States Tax Court setting income tax deficiencies owed by Kenton Meadows Company, Inc. at $19,695 and $3,051 and by

Kenton and Acel I. Meadows at $64,641 and $902 for the 1972 and 1973 tax years, respectively. Two issues are raised on appeal: (1) whether the Tax Court erred in determining that a distribution of bank stock owned by the corporate taxpayer in exchange for a portion of its outstanding stock was a distribution of property taxable as a dividend rather than as a capital gain resulting from a partial liquidation under 26 U.S.C. § 346(b),[1] and (2) whether the Tax Court erred in finding that certain travel expenses were not deductible business expenses under section 162. The amount of the assessed deficiencies is not in question.

The material facts are largely stipulated by the parties and are detailed in the Tax Court opinion. At all times relevant Kenton Meadows (Meadows) was the sole shareholder of Kenton Meadows Company, Inc. (Company). On January 1, 1970, the Company merged with Pipeline Maintenance and Construction Inc., Meadows Stone & Paving, Inc., and Meadows Southern Construction, Inc., each of which was wholly owned by Meadows. Prior to the merger, the business of the Company included general contracting and equipment rental. By virtue of the merger, the Company's business also included pipeline maintenance and construction, asphalt paving, quarried stone sales, and road and bridge construction.

In 1970–71, the Company's pipeline business was concentrated in construction of "cross-country" gas pipelines. Because of a shortage of liquid capital, the Company experienced difficulty in obtaining necessary bonding for pipeline construction projects. To remedy this situation and at the urging of a bonding agent, Meadows transferred 150 shares of personally owned bank stock to the Company and received 550 shares of Company stock in return. Meadows' basis in the bank stock was $84,350. This transaction enabled the Company to acquire bonds for a four million dollar pipeline project which it completed by the end of 1971.

1. All subsequent section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.

Unable to locate additional cross-country pipeline work, the Company decided to sell certain equipment known as "pipelayers" or "sidebooms" which were generally not adaptable for use in other construction unless the job required lifting and lowering of items comparable to the long, heavy pipe sections. Seven sidebooms were sold between January and March, 1972 for a total of $238,234. All of the sidebooms had been purchased by the Company, not Pipeline Maintenance and Construction, prior to the merger. Proceeds from the sale of the sidebooms went towards retiring "pipeline-related debt" which was collateralized not only by sidebooms but also by multi-purpose equipment retained by the Company. The Company also transferred the 150 shares of bank stock back to Meadows and redeemed the 550 shares of outstanding company stock previously exchanged therefor. At the time of this transfer, January 14, 1972, the fair market value of the bank stock had increased to $107,000.

On June 2, 1972, the Company purchased a sideboom similar to those sold earlier that year. This equipment was never used in a pipelining operation but was rented to a railroad company. Since 1972, the Company has not performed any cross-country pipelining work but has performed smaller pipelining projects known as "utility" or "station" jobs.

■ The taxpayers assert that cross-country pipelining was a separate trade or business and that its termination is entitled to the favored status of section 346(b).[2] For the sale of the sidebooms and transfer of the bank stock to be deemed a partial liquidation under section 346(b), there must be a finding of a trade or business which is separate from the remaining corporation. Two major factors in determining the existence of a separate trade or business can be gleaned from applicable Treasury Regulations and case law. The business must (1) contribute a substantial part of the combined corporate income, and (2) operate under some form of separate supervision and control. *Mains v. United States*, 508 F.2d 1251 (6th Cir.1975), *cert. denied*, 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978); *Blaschka v. United States*, 393 F.2d 983, 184 Ct.Cl. 264 (1968); Treas.Reg. §§ 1.346–1(c), 1.355–1(c) (1960). The taxpayers contend that the Tax Court clearly erred in its findings regarding both of these factors.

■ In light of the income produced from pipeline work and its proportion to the rest of the Company's income as shown by the corporate tax returns presented below, the Tax Court's finding that the evidence failed to show that cross-country pipelining produced a substantial part of the Company's income is questionable. Notwithstanding this questionable finding, the lack of evidence on separate supervision and control provides an independent basis for concluding that no separate trade or business existed. A separate business under section 346(b) includes supervision and control over every integral step and operation which occurs in the production of income and payment of expenses. *See* Treas.Reg. § 1.355–1(c). The Tax Court found that the taxpayers failed to present sufficient evidence to determine if the requisite degree of separate supervision and

**2.** Prior to amendment in 1982, section 346(b) provided:

(b) Termination of a business.—A distribution shall be treated as a distribution described in subsection (a)(2) if the requirements of paragraphs (1) and (2) of this subsection are met.

(1) The distribution is attributable to the corporation's ceasing to conduct, or consists of the assets of, a trade or business which has been actively conducted throughout the 5-year period immediately before the distribution, which trade or business was not acquired by the corporation within such period in a transaction in which gain or loss was recognized in whole or in part.

(2) Immediately after the distribution the liquidating corporation is actively engaged in the conduct of a trade or business, which trade or business was actively conducted throughout the 5-year period ending on the date of the distribution and was not acquired by the corporation within such period in a transaction in which gain or loss was recognized in whole or in part.

Whether or not a distribution meets the requirements of paragraphs (1) and (2) of this subsection shall be determined without regard to whether or not the distribution is pro rata with respect to all of the shareholders of the corporation.

control had been satisfied. The record does not establish that pipeline activities were subjected to separate accounting or managerial operations which would lend support to the taxpayers' position. The taxpayers have pointed to no evidence in the record on this factor and only argue that completion of expensive pipeline projects in and of itself manifests the presence of separate business control. We agree with the Tax Court that the taxpayers simply failed to carry their burden on this factor. Consequently, we conclude that the record adequately supports the Tax Court's determination that the Company was an integrated operation involving pipeline construction and various other kinds of heavy and highway construction work.

■ The Tax Court advanced two alternative reasons for its decision. It found that the retention by the Company of some equipment used in pipelining and the fact that all sideboom proceeds were not distributed to Meadows further removed the transactions in question from section 346(b).[3] Inasmuch as the taxpayers failed to meet the threshold requirement of establishing a separate trade or business, their assertions of error with regard to the Tax Court's alternative reasons are inconsequential to the decision. However, it is appropriate to address the taxpayers' position on these alternative reasons for they illustrate the true integration among all of the Company's operations.

■ To qualify under section 346(b), all of the assets, or proceeds, of a terminated business must be distributed. To hold otherwise would give special tax treatment to something less than termination of a separate business by permitting reinvestment of capital from the terminated business into the remaining business of the corporation. *Gordon v. Commissioner,* 424 F.2d 378, 385–87 (2d Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 63, 27 L.Ed.2d 86 (1970). The taxpayers' argument that retirement of pipeline debts had to precede

distribution to Meadows is reasonable. However, the debts which were retired were collaterized not only by the sidebooms but also by other equipment which was retained by the Company. Thus, the distribution was less than complete and the sale of the sidebooms effectively enriched the remaining business. Awarding the taxpayers the benefits of section 346(b) under these circumstances would be contrary to the statutory objective.

With respect to the deductibility of the travel expenses, we find no reversible error.

The judgment of the Tax Court is accordingly,

AFFIRMED.

---

**3.** It is noted that both of these reasons were premised on the taxpayers' assertion that cross-country pipelining was a separate business not only from the Company's other construction

work but also from other pipelining operations. We do not find the Tax Court's rejection of this assertion to be clearly erroneous.